**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOHN COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number CIV-05-289-C |
| | ) |
| MEDICAL SAVINGS INSURANCE | ) |
| COMPANY, an Indiana Corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Now before the Court is a Motion for Summary Judgment filed by Defendant Medical Savings Insurance Company (MSIC) and a cross-Motion for Partial Summary Judgment filed by Plaintiff John Cook (Cook). The litigants timely filed a response. In addition, MSIC filed a reply. Accordingly, the motions are ripe for adjudication. The Court, upon consideration of the litigants' submissions and the applicable law, now **DENIES** both motions.

### BACKGROUND

Cook brings the instant action under diversity jurisdiction, 28 U.S.C. § 1332, and alleges two causes of action: that MSIC committed fraud by making false representations in order to induce him to purchase an insurance policy, and that MSIC breached the implied covenant of good faith and fair dealing by failing to properly calculate the amount of benefits due under the insurance policy. MSIC denies Cook's claims and argues it paid the proper amount of benefits due.

Cook submitted an application (Application) and subsequently purchased health insurance under a group plan from MSIC in October 2003. MSIC then issued Cook a Group Insurance Certificate (Certificate) that same month pursuant to the terms of MSIC's Group Insurance Policy (Master Policy) (the Application, Master Policy, and Certificate together as a whole are referred to as the Contract). The essence of the Contract provided that covered expenses would be subjected to a "reasonable and customary charge" calculation as determined solely by MSIC, and that any amount in excess of MSIC's calculation would not be covered by the Contract.

In 2002, and again in 2003, the Oklahoma Department of Insurance (ODOI) subjected MSIC to a Market Conduct Examination as a result of numerous complaints filed with ODOI by Oklahoma insureds. In December 2003, MSIC, in conformity with an agreement between it and ODOI, attempted to modify the Contract by issuing a rider which replaced the "reasonable and customary charge" definition with a slightly different definition entitled "reimbursable charge" (the Reimbursable Charge Rider). MSIC interprets the term "reimbursable charge" to mean the amount Medicare pays for the same or similar service plus 26%.

Cook entered Mercy Health Center (Mercy) in September 2004 for outpatient cancer surgery, incurred medical expenses totaling $19,531.45, and timely submitted a claim for benefits under the Contract. MSIC determined that Cook's treatment qualified as covered expenses, applied the "reimbursable charge" calculation, and determined the amount payable to Mercy under the Contract to be $9,294.00. Cook incurred a non-precertification penalty

in the amount of $2,323.50—a penalty undisputed by Cook—which reduced the benefits payable to $6,970.50. In turn, MSIC tendered to Mercy a check in the amount of $6,970.50 as payment in full. Mercy declined to accept MSIC's check as payment in full and billed Cook for the full amount of the charges. As a result, Cook filed the instant action.

## APPLICABLE LAW AND THE STANDARD OF REVIEW

In a diversity case, the Court applies the substantive law of Oklahoma, including its choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The Contract clearly indicates that Oklahoma is the place of both performance and creation (Pl.'s Mot. for Partial Summ. J., Dkt. No. 67, Ex. 1, at 2, 4); accordingly, Oklahoma law governs the interpretation of the Contract. 15 Okla. Stat. § 162; Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985).

Fed. R. Civ. P. 56(a) and (b) authorize either litigant to move the Court for summary judgment by showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). How the moving party may demonstrate that it is entitled to summary judgment depends upon which party bears the burden of persuasion at trial. Anderson v. Dep't of Health & Human Servs., 907 F.2d 936, 947 (10th Cir. 1990). When the moving party bears the burden of persuasion at trial, the moving party must put forth evidence demonstrating that it would be entitled to a directed verdict. Id. A successful demonstration shifts the burden of production to the non-moving party who, in turn, must go beyond the pleadings and submit evidence demonstrating the existence of a genuine issue worthy of trial in order to defeat summary judgment. Id.

When the non-moving party bears the burden of persuasion at trial, the moving party may demonstrate it is entitled to summary judgment by two alternative means. First, the moving party may submit evidence negating an element of the non-moving party's claim. 10A Charles Alan Wright et al., Federal Practice and Procedure § 2727 (3d ed. 1998). Second, the moving party may point out to the Court that the non-moving party lacks sufficient evidence on an essential element of his claim. Id.

The Court's function at the summary judgment stage is not to weigh the evidence but to determine whether there is a genuine issue worthy for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). "An issue is 'genuine' if [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to create a dispute of fact that is 'genuine' . . . ." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248). When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Anderson, 477 U.S. at 255; Simms v. Okla. ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

Within the context of cross-motions for summary judgment, the litigants do not necessarily concede the absence of a genuine issue of material fact in dispute. Nafco Oil & Gas, Inc. v. Appleman, 380 F.2d 323, 324-25 (10th Cir. 1967). The Court is to consider each motion on its own merits; "the denial of one does not require the grant of another." Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979). Indeed, both motions may be denied. Id. When adjudicating the motions, the Court is authorized to assume that there is no additional evidence which needs to be considered other than that filed by the litigants; nevertheless, summary judgment is inappropriate if any material fact is still in dispute. Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).

## DISCUSSION

The core contention between the litigants is whether MSIC acted reasonably and in good faith under the terms of the Contract. However, the litigants also dispute whether the Reimbursable Charge Rider is part of the Contract; as a result, the Court must initially resolve this dispute prior to addressing the motions at issue.

Cook argues the Reimbursable Charge Rider is not part of the Contract, as Cook never gave written consent to the proposed modification as required by Oklahoma law. MSIC proffers two arguments in response: that the Reimbursable Charge Rider is part of the Contract as its definition of "contract" specifically includes riders issued to the certificate holder, and that the "reasonable and customary" charge calculation is precisely the same as the "reimbursable charge" calculation; thus even if the Reimbursable Charge Rider is not considered, the result is the same. The Court, after canvassing the applicable law, finds that

the Reimbursable Charge Rider is not part of the Contract and that the two calculations are not precisely identical.

In Oklahoma, an insurance policy is a contract, 36 Okla. Stat. § 3602, interpreted as a matter of law and subject to the usual rules of contract construction and interpretation except as otherwise provided by law, 15 Okla. Stat. § 151.  See Redcorn v. State Farm Fire & Cas. Co., 2002 OK 15, ¶ 4, 55 P.3d 1017, 1019.  As an insurance provider, MSIC "is held to knowledge of the applicable Oklahoma law, and the reasonableness of its decision must be judged in light of that law."  Willis, 42 F.3d at 612 (citing Timmons v. Royal Globe Ins. Co., 1982 OK 97, ¶ 20, 653 P.2d 907, 913-14).  The Certificate states that "[a]ll provisions, limitations, and exclusions of the group insurance *policy* apply to the insurance evidenced by this *certificate*, even if not mentioned in this *certificate*."  (Pl.'s Mot, Ex. 1, at 1.)  The term "policy" is also defined by the Certificate:  "'*Policy*' when italicized, means the master *policy* issued and delivered to the *policyholder*.  It includes the attached pages, the applications, and any amendments."  (Id. at 10.)  Section 9 of the Master Policy, entitled "**UNIFORM PROVISIONS (Applicable to All Insurance)**," lists the documents considered to comprise the litigants' contract:

> **CONTRACT**:  The entire contract between the *policyholder* and *us* consists of:  (A) the *policy*; (B) the applications of the *policyholder* and the persons insured; and (C) the riders issued to *certificateholders*.
> . . .
> No change in the *policy* will be valid unless it is:  (A) noted on or attached to the *policy*; (B) signed by one of *our* officers; and (C) delivered to the *policyholder*.

(Pl.'s Mot., Ex. 2, at 46.)  Section 9 of the Master Policy also contains the following key provision:

> **CONFORMITY WITH STATE STATUTES:**  The *policy* will be interpreted by the laws of the state in which it is delivered.  Any part of the *policy* which is in conflict with the laws of the state in which it is delivered is changed to conform to the minimum requirements of that state's laws.

(Id. at 43; Pl.'s Mot., Ex. 2, at 46.)

In Oklahoma, "'[a]ccident and health insurance' is insurance against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto." 36 Okla. Stat. § 703.  Cook's insurance, a "Medical Savings Health Plan" providing, inter alia, inpatient hospital, surgical, medical expense benefits, and major medical benefits, clearly falls within § 703's definition of accident and health insurance.  (See Pl.'s Mot, Ex. 1, at 16-22.)  The modification of accident and health insurance contracts is governed by Oklahoma's Health Care Fraud Prevention Act:

> No insurer shall modify a group or individual policy of existing coverage . . . under an accident and health insurance policy unless written consent for such modification . . . is obtained from the policyholder. However, this section shall not be construed as prohibiting a modification that is provided for in an existing policy that has been filed and approved by the Insurance Commissioner.

36 Okla. Stat. § 1219.5.  See generally 15 Okla. Stat. § 237 ("A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.")

Here, MSIC's argument that the "reimbursable charge" computation under the Reimbursable Charge Rider is precisely the same as the "reasonable and customary charge"

computation under the Certificate is factually unsupportable. The Reimbursable Charge Rider modifies the "reasonable and customary charge" computation by deleting one entire existing factor and adding two altogether new factors MSIC may consider in its determination of benefits. (Compare Pl.'s Mot., Ex. 2 at 12 (defining "reasonable and customary charge") with id., Ex. 1 at 52 (defining "reimbursable charge").) Consequently, the calculations are not precisely the same and Cook's benefits under the Contract will vary according to the calculation used. Since MSIC has not provided the Court with Cook's written consent to modify the methodology by which his insurance benefits are calculated as required by § 1219.5, and neither the Master Policy nor the Certificate contain a provision triggering § 1219.5's statutory exception, the Reimbursable Charge Rider is not a part of the Contract and use of the "reimbursable charge" calculation is improper. See Aetna Life Ins. Co. v. Wilson, 1942 OK 59, ¶¶ 16-17, 123 P.2d 656, 658 (holding lower court did not err when it rejected an insurance rider as part of the policy because the insured did not consent to the rider).

**I.    Cook's Motion for Partial Summary Judgment.**

For Cook's motion, the litigants' dispute centers upon MSIC's tender of $6,970.50 as payment in full for Cook's actual incurred medical bills of $19,531.45. Cook seeks a finding that MSIC's payment is contrary to the Contract's terms because the Contract obligated MSIC to pay the full amount of covered expenses Cook actually incurred. MSIC denies Cook's interpretation of the Contract and argues that the Contract only obligates

MSIC to pay covered expenses that are "reasonable and customary" as therein defined; therefore, partial summary judgment is inappropriate. MSIC's arguments are persuasive.

MSIC and Cook are free to contract for insurance against any risks they see fit to cover, but, upon the contract's formation, they are bound by its terms. Wiley v. Travelers Ins. Co., 1974 OK 147, ¶ 16, 534 P.2d 1293, 1295. A contract is not ambiguous merely because the litigants disagree as to its interpretation or offer differing constructions of its provisions. Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541, 545-46. When adjudicating a contract dispute the Court views the contract as a whole and gives effect to all its provisions. Id. at 2003 OK 5, ¶ 14, 63 P.3d at 546; see 15 Okla. Stat. § 157; 36 Okla. Stat. § 3621. The Court should not use "a forced or strained construction," take "a provision out of context," or "narrowly focus[ ] on a provision," Wynn v. Avemco Ins. Co., 1998 OK 75, ¶ 17, 963 P.2d 572, 575, "'so as to import a favorable consideration to either party than that expressed in the contract.'" Crawford v. Indem. Underwriters Ins. Co., 1997 OK CIV APP 39, ¶ 6, 943 P.2d 1099, 1101 (quoting Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 12, 812 P.2d 372, 376). The Court may not rewrite the contract. Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 5, 49 P.3d 703, 706.

If the contract is clear and unambiguous, "the court [then] is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." Pitco Prod. Co., 2003 OK 5, ¶ 12, 63 P.3d at 545 (footnotes omitted). The contract's language is the only legitimate evidence as to what the litigants intended; thus the Court may not go outside the "four-corners" of the contract when discerning the litigants' rational and general

intent. Id. ¶ 14, 63 P.3d at 546. The Court must give the contract's terms their plain, popular, and ordinary meaning unless technical terms are used and intended to convey a specific technical meaning, in which case the latter is to be followed. Id.; 15 Okla. Stat. § 160. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Wiley, 1974 OK 147, ¶ 16, 534 P.2d at 1295.

Liability under a contract is determined by comparing the general declaration of coverage with any provisions specifically limiting certain risks or delimiting the extent of coverage. Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13, 812 P.2d 372, 377. Therefore, provisions subsequent to the general declaration of coverage may reduce coverage or even completely remove a covered item from coverage. Id.

The litigants do not argue that any provision of the Contract is ambiguous; they merely differ as to the amount MSIC should pay for covered expenses incurred by the insured. For the matter at issue, the Court's examination of the Contract as a whole reveals that it is not ambiguous because it is not susceptible to two reasonable interpretations. Pitco, 2003 OK 5, ¶ 14, 63 P.3d at 545-46. Accordingly, the Court interprets the Contract as a matter of law.

The Master Policy defines "covered expense" in § 2 entitled "**DEFINITIONS**": "'*Covered expense*' means an expense which is: (A) incurred while the *primary insured*['s] . . . insurance is in force under the *policy*; (B) covered by a specific benefit provision of the *policy*; and (C) not excluded or limited anywhere in the *policy*." (Pl.'s Mot, Ex. 2, at 8.) In

§ 6, entitled "**GENERAL BENEFITS PROVISIONS**," under the sub-parts applicable to "*INPATIENT HOSPITAL*, **SURGICAL, MEDICAL EXPENSE BENEFITS**" and "**MAJOR MEDICAL BENEFITS**," the Master Policy explicitly limits coverage: "**EXCLUSIONS**: No benefits are payable . . . for charges: (A) which exceed the *reasonable and customary charges*; . . . or (F) which are excluded in Section 7 of the *policy*." (Id. at 19-20, 24.)  Section 7, entitled "**GENERAL EXCLUSIONS AND LIMITATIONS Applicable to all Benefits Except Life Insurance**," further defines the limitation:

> **EXCLUSION ON CHARGES IN EXCESS OF REASONABLE AND CUSTOMARY:** If a charge incurred by a covered person for services or supplies is in excess of the reasonable and customary charge, no payment will be made with respect to the excess amount of the charge. That part of the charge which is in excess of the reasonable and customary charge will not qualify as a covered expense under the policy.

(Id. at 38.)  The Certificate also contains virtually identical language as the Master Policy. (See Pl.'s Mot., Ex. 1, at 6, 7, 16-17, 21, 35.)

Here, the Contract defined what constituted a covered expense and clearly denoted the applicability of a "reasonable and customary charge" methodology which might reduce the amount payable as a covered expense. Under the express terms of the Contract, MSIC is not necessarily obligated to pay the full amount of expenses incurred for covered services. In addition, Cook has not demonstrated that the full amount of his medical bills—$19,531.45—falls within the realm of reasonable and customary charges as defined by the Master Policy. Therefore, the grant of summary judgment would be inappropriate.

**II.     MSIC's Motion for Summary Judgment.**

MSIC moves the Court for summary judgment on Cook's claims of bad faith, fraud, and punitive damages. The Court addresses each claim in order.

**A.      Cook's Bad Faith Claim.**

MSIC contends that Cook cannot recover under the tort of bad faith for two reasons: that MSIC paid benefits according to the Contract, and that the Oklahoma Department of Insurance approved its methodology of payment. Neither argument is persuasive.

For its first argument, MSIC asserts that it cannot, as a matter of law, be liable for bad faith because it excluded that amount of Cook's bills which it deemed to be in excess of reasonable and customary charges as allowed by the Contract's terms. The current legal standard for bad faith claims in Oklahoma is concisely stated in <u>McCorkle v. Great Atl. Ins. Co.</u>, 1981 OK 128, ¶ 21, 637 P.2d 583, 587:

> [T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

Before Cook may submit his bad faith claim to the trier of fact, he must present sufficient evidence for the Court to determine as a matter of law that MSIC's conduct at the time he requested MSIC to perform its contractual obligations may be reasonably perceived as tortious. See <u>Oulds v. Principal Mut. Life Ins. Co.</u>, 6 F.3d 1431, 1436 (10th Cir. 1993); <u>Buzzard v. Farmers Ins. Co., Inc.</u>, 1991 OK 127, ¶ 14, 824 P.2d 1105, 1109.

Here, Cook presents evidence from which a reasonable jury could conclude that MSIC did not have a reasonable good faith belief for withholding payment above its tender of $6,970.50 as payment in full of Cook's benefits under the Contract. First, as discussed above, covered expenses are only subject to the "reasonable and customary charge" calculation.

> "*Reasonable and customary charge*" means, with respect to fees charged by a *medical practitioner* or by a supplier of professional services, medicines, or supplies, the *most common charge* for similar professional services, medicines, or supplies within the area in which the charge is incurred, so long as those charges are reasonable. *Reasonable and customary charges* will be determined by *us*.
>
> The amount which would equal or exceed the amounts charged by two-thirds of the providers within the area in which the charge is incurred will be considered the *most common charge*. "Area" means: (a) the three digit zip code in which the service or supply is provided; or (b) a greater area if necessary to obtain a representative cross section of charges for a like service or supply.
>
> In determining whether a charge is reasonable, *we* may consider one or more of the following factors:
> - (A) the level of skill, extent of training, and experience required to perform the procedure or service;
> - (B) the length of time required to perform the procedure or service as compared to the length of time required to perform other similar procedures or services;
> - (C) the severity or nature of the *illness* or *injury* being treated;
> - (D) the amount charged for the same or comparable services or supplies in the locality;
> - (E) The [sic] amount charged for the same or comparable services or supplies in other parts of the country;
> - (F) the cost to the provider of providing the service or performing the procedure; and

>   (G)   such other factors as *we*, in the reasonable exercise of *our* discretion, determine are appropriate.

(Pl.'s Mot, Ex. 2 at 12.) The focal point of the reasonable and customary charge calculation concerns the fee actually charged by the medical practitioner or professional services supplier. In addition, the definition's terms require MSIC to determine the "most common charge." For Cook's claim, however, MSIC never determined the most common charge (id. at Ex. 3, 111-13, 151) and may have considered in its calculation methodology what the medical practitioner or professional services supplier would accept as payment—a factor not found in the Contract—as opposed to the fees charged (id. at 115). Whether MSIC's actions were reasonable is thus for the trier of fact.

Second, MSIC applied the "Medicare + 26%" methodology to Cook's claims without first obtaining his written consent. Whether MSIC's decision to do so was based on a reasonable understanding of Oklahoma law governing the modification of insurance contracts is also for the trier of fact. See Willis, 42 F.3d at 612-13.

For its last argument, MSIC asserts that it cannot be liable for bad faith as ODOI reviewed and approved its methodology of payment. MSIC supports its assertion by pointing to two Market Conduct Examination Reports (MCE Report #1 and #2 respectively) adopted by ODOI wherein, according to MSIC, ODOI concluded that MSIC's claims practice of using the "Medicare + 26%" methodology is not violative of MSIC's contracts. In addition, MSIC points to a letter from ODOI to Mr. Jack Petty, an individual not a party to the instant action who filed a complaint with ODOI, wherein an ODOI assistant director states that the

prior insurance department administration approved the reasonable and customary charges method of reimbursement. MSIC's evidence is unavailing.

First, neither MCE Report actually supports MSIC's conclusion. For MCE Report #1 dated December 1, 2002, ODOI did not find MSIC's claims practices in violation of its contracts due to a side agreement between MSIC and ODOI which modified MCE Report #1 that ODOI subsequently adopted. A letter from MSIC's counsel to the ODOI spells out the agreement:

> Medical Savings has authorized me to confirm that <u>in exchange for the removal of any allegations or conclusions that the company failed to pay contract benefits during the period subject to examination from the final market conduct examination report</u>, the company will:
>
> 1. Modify it's [sic] contracts by removing its current "reasonable and customary charge" language and replace it with the "reimbursable charge" provisions provided to you and accepted by the Department [of Insurance] earlier today . . . This language will be incorporated into all certificates issued and delivered on or after January 1, 2004.
>
> Furthermore, this language will be incorporated, by written endorsement issued and delivered to all in force Oklahoma contracts effective January 1, 2004, subject to normal regulatory approval of the Department [of Insurance].
> . . .
> 3. Agree to pay no less than Medicare plus 26% on any claims that are the subject of an outstanding complaint filed with the Oklahoma Department of Insurance by an individual insured by Medical Savings. Furthermore, Medical Savings agrees to pay Medicare plus 26% on any claims incurred by its Oklahoma insureds prior to January 1, 2004 and will extend that offer, in writing, when it delivers the new endorsement to in-force certificate holders.

(Def.'s Mot. for Summ. J., Dkt. No. 66, Ex. 2 attached to Ex. 3) (emphasis added.)

MCE Report #2 dated December 31, 2003, fares little better in supporting MSIC's conclusion.

> The purpose of [MCE Report #2] was to determine the amount, nature and extent of outstanding claim checks resulting from disputed claims filed by Oklahoma policyholders. These disputed claims arose as a result of [MSIC]'s adjustment of provider billings based on the contractual limitation of reasonable and customary charges. The examination included, but was not limited to, the following areas of [MSIC]'s operations:
>
>   1. Complaint Handling;
>   2. Claim Practices; and
>   3. Check Processing

(Id. at Ex. 3 attached to Ex. 3, at 7.) Although the examination included MSIC's claims practices, the section entitled "**CLAIMS HANDLING**" reveals that no investigation of any significance took place regarding MSIC's use of the "Medicare + 26%" methodology: "It was determined that the claims processed had no coding that would allow identification of those files subject to adjustment for reasons of reasonable and customary. No listing was requested." (Id. at 10.)

Second, MSIC's reliance on the Jack Petty letter is likewise misplaced. The Court is unaware of the nature of Jack Petty's complaint, the terms of his insurance contract, or whether his complaint even involved the application of the "Medicare + 26%" methodology.

In addition, MSIC's assertion that ODOI may have approved MSIC's "Medicare + 26%" methodology in some form or at some time is premature. MSIC failed to first demonstrate either that the Reasonable Charge Rider is part of the Contract or that ODOI

maintains authority to waive Oklahoma law pertaining to the modification of existing health insurance contracts.

MSIC has neither negated an element of Cook's bad faith claim nor demonstrated that Cook lacks sufficient evidence to prove his claim. Accordingly, the grant of summary judgment would be inappropriate.

**B.    Cook's Fraud Claim.**

MSIC further contends that Cook cannot recover in fraud as he had no right to rely upon the insurance agent's alleged misrepresentations. MSIC supports its contention with three arguments: that Cook's application explicitly stated that the agent could not change the policy; that Cook is charged with knowledge of the Contract's terms even though he failed to read it; and that oral evidence tending to alter or contradict the written contract is inadmissible parol evidence.

Cook correctly argues that all three arguments fail because he specifically alleged the existence of fraud. In Oklahoma, Cook has no duty to review the Contract for discrepancies between it and the statements of MSIC's agent. Bus. Interiors, Inc. v. Aetna Cas. & Sur. Co., 751 F.2d 361, 364 (10th Cir. 1984). Nevertheless, he is bound by the Contract's terms regardless of his actual knowledge of its provisions except in cases of, inter alia, fraud. Wilson v. Mass. Indem. & Life Ins. Co., 920 F.2d 1548, 1551-52 (10th Cir. 1990). Evidence of fraud in the form of misrepresentations of fact is also admissible as it falls outside the scope of the parol evidence rule. First Nat'l Bank in Durant v. Honey Creek Entm't Corp.,

2002 OK 11, ¶¶ 10-12, 54 P.3d 100, 103-04.  Accordingly, MSIC's arguments must fail and the grant of summary judgment would be inappropriate.

MSIC also argues for the first time in its reply brief that Cook has not come forward with evidence for each element of fraud; therefore, summary judgment is appropriate.  Cook was not required to come forth with evidence in support of each element of fraud as MSIC never contested the sufficiency of Cook's evidence in its motion.  See Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).  In addition, the Court declines to address on the merits arguments which are raised for the first time in a reply brief.  See Stumps v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).

### C.    Cook's Punitive Damages Claim.

MSIC lastly contends that Cook cannot recover punitive damages as no viable tort action exists and because MSIC's conduct does not warrant punitive damages.  MSIC's arguments may be disposed of with relative ease.  As discussed above, Cook maintains viable tort claims as multiple genuine issues of material fact exist surrounding MSIC's overall handling of Cook's claim.  Moreover, when MSIC's actions are compared to both the Contract's terms and the knowledge of Oklahoma law with which it is charged to possess, a reasonable jury could conclude that MSIC recklessly disregarded its duty to deal fairly and act in good faith or did so intentionally and with malice.  See 23 Okla. Stat. § 9.1.  The grant of summary judgment would be inappropriate.

## CONCLUSION

Neither litigant sufficiently demonstrated that the Court should grant summary judgment as a matter of law. Therefore, Cook's Motion for Partial Summary Judgment [Dkt. No. 67] and MSIC's Motion for Summary Judgment [Dkt. No. 66] are **DENIED**.

IT IS SO ORDERED this 6th day of April, 2006.

ROBIN J. CAUTHRON
United States District Judge